UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CURTIS VARNER, § | | |
| *Plaintiff*, § | | |
| § | ACTION NO._____ | |
| v. § | | |
| § | | |
| CITY OF HOUSTON; § | | |
| SGT. ANDREW MUSTAIN, Individually § | | |
| and in His Official Capacity; LT. NATHAN § | | |
| CARROL, Individually and in His Official § | JURY TRIAL DEMANDED | |
| Capacity; LT. CARBALLO, Individually, § | | |
| and in His Official Capacity, COMMANDER § | | |
| BECKER, Individually and in His Official § | | |
| Capacity; HOUSTON POLICE OFFICERS § | | |
| UNION § | | |
| *Defendants*. § | | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW PLAINTIFF Curtis Varner, and before this Honorable Court, submits his Plaintiff's Original Complaint, and for good cause would show as follows:

### I. INTRODUCTION

1. This is a civil-rights action arising from intentional race discrimination, a racially hostile work environment, and retaliation inflicted upon Plaintiff Curtis Varner, an African-American police officer employed by the Houston Police Department ("HPD").

2. Acting under color of state law, Defendants deprived Plaintiff of the equal right to make and enforce contracts, including the full enjoyment of the terms, conditions, and privileges of public employment, in violation of 42 U.S.C. § 1981, enforceable against

state actors through 42 U.S.C. § 1983. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731–33 (1989); *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 462–63 (5th Cir. 2001).

3. From 2021 through the present, Plaintiff was subjected to racial slurs, exclusion from equipment and officer-safety protections, disparate discipline, fabricated misconduct allegations, retaliatory suspensions, and blacklisting from career advancement after opposing racial discrimination.

4. These actions were not isolated incidents but the foreseeable result of municipal customs, policymaker ratification, and retaliatory coordination with the police union, rendering all Defendants liable.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because all material events occurred in Harris County, Texas.

## III. PARTIES

7. Plaintiff Curtis Varner is an African-American male and sworn HPD officer residing in Harris County, Texas.

8. Defendant City of Houston is a Texas municipal corporation responsible for HPD's policies, customs, training, supervision, and discipline, located in Harris County, Texas, and may be served with process by serving the City Secretary at 900 Bagby Street, Houston, Texas 77002.

9. Defendant Sgt. Andrew Mustain, Defendant Lt. Nathan Carrol, Defendant Lt. Carballo, and Defendant Commander Becker were supervisory HPD officers who exercised direct authority over Plaintiff. Each is sued: (i) *Individually*, for personal participation in unconstitutional conduct; and (ii) *Officially*, as agents exercising delegated policymaking authority for the City. These defendants may be served wherever they may be found.

10. Defendant Houston Police Officers Union ("HPOU") is a labor organization that acted jointly with HPD officials to retaliate against Plaintiff and chill protected opposition to racial discrimination, and may be served with process through its registered agent at 1600 State Street, Houston, Texas 77007.

## IV. FACTUAL ALLEGATIONS

11. Plaintiff is a Black police officer employed by the Houston Police Department ("HPD"). Throughout his employment, Plaintiff has been subjected to racial discrimination, retaliation, and a hostile work environment. Plaintiff was also the only Black officer assigned to HPD's Midwest Crime Suppression Team ("CST").

12. CST officers repeatedly subjected Plaintiff to racially charged remarks, including "Affirmative Action" and explicit racial slurs, in the presence of supervisory personnel who laughed, minimized the conduct, or failed to intervene. Lieutenant Carballo was present during incidents where discriminatory behavior was reported, such as the offensive comments made by other officers. However, no proactive measures were taken to address or prevent such behavior.

13. Plaintiff was initially denied a position on the Midwest Crime Suppression Team ("CST") due to his race. After being placed on the team, Plaintiff faced ongoing

mistreatment, including being left alone with suspects, denied equipment issued to other team members, and receiving unfairly lowered performance evaluations by Sergeant Mustain under the direction and instruction of Lieutenant Carballo.

14. Plaintiff was repeatedly left alone with suspects during arrests, a deviation from officer-safety protocols that materially altered the conditions of his employment and placed his life at risk.

15. Plaintiff reported these issues to Sergeant E.J. Gary, who escalated the complaints to the Chief of Police. However, instead of addressing the discrimination, HPD retaliated against Plaintiff by filing an untruthfulness complaint against him in an attempt to terminate his employment.

16. In March 2022, Plaintiff was called into a meeting with Sergeant Mustain and Lieutenant Carballo, where he was discouraged from pursuing his complaints. Shortly thereafter, Plaintiff was subjected to further retaliation, including being accused of perjury and being issued a 15-day suspension.

17. Sgt. Mustain admitted to Plaintiff that CST officers did not want a "black officer" on the unit and that interview scoring had been manipulated by the chain of command, or at their direction, to prevent Plaintiff's selection.

18. After Plaintiff raised concerns internally regarding racial hostility, Defendants retaliated by issuing fabricated "untruthfulness" complaints, lowering evaluations, suspending Plaintiff, blocking transfers, and stigmatizing him as untrustworthy.

19. Following the March 4, 2022, meeting, Lieutenant Carballo, along with Sergeant Mustain and Commander Becker, was involved in issuing an internal affairs complaint against Mr.

Varner. This action is believed to have been part of a plan to retaliate against Mr. Varner for exposing discrimination.

20. Despite being cleared of wrongdoing in the internal affairs investigation, Plaintiff continued to face retaliation, including being denied opportunities for advancement and being subjected to a hostile work environment.

21. Plaintiff was ultimately cleared of wrongdoing, yet retaliatory discipline continued—supporting a strong inference of pretext and but-for causation. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412–13 (5th Cir. 2007).

22. In August of 2025, Plaintiff learned that the disciplinary citation on his record had not been corrected as promised, further hindering his career progression. The Houston Police Officers Union publicly attacked Plaintiff for reporting discrimination, further damaging his reputation and reinforcing the retaliatory campaign. The actions of Defendants constitute a pattern of racial discrimination and retaliation in violation of 42 U.S.C. § 1981.

## V. CAUSES OF ACTION

23. Plaintiff incorporates by reference all preceding paragraphs, *in haec verba*.

24. At all relevant times, Defendants acted under color of state law.

**A.  Race Discrimination and Hostile Work Environment under 42 U.S.C. § 1981 via 42 U.S.C. § 1983**

24. Section 1981 prohibits intentional race discrimination in public employment, including hostile work environments, when enforced through § 1983. *Felton v. Polles*, 315 F.3d 470, 481–82 (5th Cir. 2002). The Fifth Circuit has held that § 1981 prohibits intentional

race discrimination in public employment and is enforceable against state actors through 42 U.S.C. § 1983. See *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 462–63 (5th Cir. 2001); *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 339 (5th Cir. 2003).

25. To state a claim for race discrimination under § 1981, a plaintiff must plausibly allege that (a) he is a member of a protected class, (b) he suffered an adverse employment action, and (c) the adverse action was taken because of race. See Johnson v. PRIDE Indus., Inc., 7 F.4th 392, 403 (5th Cir. 2021).

26. To plead a hostile work environment, a plaintiff must allege harassment that was **severe or pervasive**, objectively and subjectively offensive, and imputable to the employer. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

**Enforcement of Rights**

27. 42 U.S.C. § 1981 guarantees all persons the same right to make and enforce contracts, including the enjoyment of all benefits, privileges, terms, and conditions of employment, without regard to race.

28. Pursuant to *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731–33 (1989), and controlling Fifth Circuit precedent, Plaintiff enforces his § 1981 rights against Defendants through 42 U.S.C. § 1983.

29. Plaintiff satisfies these standard through repeated racial slurs, exclusion from safety resources, supervisory indifference, and disparate discipline. Defendants, through their policies, customs, acts, and omissions, deprived Plaintiff of rights secured by § 1981, in violation of § 1983.

B.       **Retaliation under 42 U.S.C. § 1981 via § 1983**

29. Retaliation for opposing racial discrimination is actionable under § 1981. *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 339–40 (5th Cir. 2003).

30. Plaintiff engaged in protected activity by complaining internally about racial discrimination. *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 476 (5th Cir. 2005).

31. Suspension, fabricated misconduct allegations, and career blacklisting constitute materially adverse actions, and continue to present date. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

32. A causal connection exists between Plaintiff's protected activity and Defendant's adverse actions, supported by close temporal proximity and Defendant's refusal to consider Plaintiff's evidence after it was disclosed. See *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

## VI. INDIVIDUAL-CAPACITY LIABILITY

*(Defendants Mustain, Carrol, Carballo, & Becker)*

33. Plaintiff incorporates by reference all preceding paragraphs, *in haec verba*.

34. Individual liability under § 1983 attaches where an official is personally involved in the deprivation of rights or implements unconstitutional acts. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).

35. Defendants Mustain, Carrol, Carballo, and Becker directly participated in, approved, or knowingly failed to stop racial harassment and retaliation.

36. Qualified immunity does not apply because the right to be free from race discrimination and retaliation in public employment was clearly established. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013).

## VII. OFFICIAL-CAPACITY AND MUNICIPAL LIABILITY

(Defendant City of Houston — *Monell doctrine*)

### A. Governing Law

37. Plaintiff incorporates by reference all preceding paragraphs, *in haec verba*.

38. A municipality is liable under § 1983 when an official policy or custom is the moving force behind a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

39. Fifth Circuit law recognizes municipal liability through: (i) official policy or decision of a policymaker; (ii) widespread custom or practice; (iii) ratification by a final policymaker; (iv) deliberate indifference in training or supervision. See *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

### B. Final Policymaker Authority

40. Under the Houston City Charter and HPD's command structure, final policymaking authority for officer discipline, transfers, suspensions, and internal investigations rests with: (a) the Chief of Police; (b) HPD command staff acting with delegated authority; and, (c) City officials who approve or ratify disciplinary outcomes.

41. Policymaking authority may be delegated and exercised by senior supervisors whose decisions are not meaningfully reviewed. *Groden v. City of Dallas*, 826 F.3d 280, 286–87 (5th Cir. 2016).

42. Defendants Mustain, Carrol, and Becker exercised delegated final authority over CST operations, evaluations, internal complaints, and disciplinary recommendations, and their actions were approved, ratified, or left undisturbed by HPD command staff.

### C. Customs of Discrimination and Retaliation

43. The City maintained a custom of tolerating racial hostility within specialized units by failing to discipline racial slurs, discouraging formal complaints, and minimizing racist conduct.

44. The City further maintained a custom of retaliating against officers who report misconduct through selective enforcement of "untruthfulness" charges, punitive transfers, and career blacklisting.

45. Persistent failure to respond to known constitutional violations constitutes municipal custom. *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002).

### D. Ratification

46. A municipality is liable when a final policymaker knowingly ratifies unconstitutional conduct. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

47. City officials upheld retaliatory discipline, refused to correct false records, denied meaningful appeals, and thereby ratified Defendants' conduct.

### E. Failure to Train and Supervise

48. The City failed to train supervisors on handling racial complaints and preventing retaliation, despite obvious and recurring risks.

49. Such failure reflects deliberate indifference under *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), and *Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir. 2000).

### VIII. UNION LIABILITY

50. A private entity acting jointly with state actors is liable under § 1983. *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980).

51. HPOU coordinated with HPD officials to retaliate against Plaintiff and chill protected activity.

### IX. DAMAGES

52. Plaintiff seeks back pay, front pay, compensatory damages, punitive damages against individual Defendants, and attorney's fees under 42 U.S.C. § 1988.

### X. JURY DEMAND

53. Plaintiff demands trial by jury on all issues triable to a jury.

### XI. PRAYER

WHEREFOR PREMISES CONSIDERED, Plaintiff respectfully requests judgment in his favor and all appropriate legal and equitable relief in the following forms:

A. Enter judgment in favor of Plaintiff;

B. Award compensatory damages;

C. Award exemplary damages;

D. Award costs and reasonable attorneys' fees;

E. Award pre-judgment and post-judgment interest;

F. Grant all other relief to which Plaintiff may be justly entitled.

Respectfully submitted,

        **DUMASNEEL**
        1800 West Loop South, Suite 2100
        Houston, Texas 77027
        (713) 462-0993
        eservice@dumasneel.com

By:/*s/ Julian Frachtman*
H. Julian Frachtman | Texas Bar No. 24087356
jfrachtman@dumasneel.com
        **Attorney for Plaintiff**